Macomber, J.
The facts in these cases being substantially the same, the appeals which are from orders denying the defendant’s motion to vacate orders of arrest may be considered together.
The ground stated in the order of arrest is that the defendants, since contracting the debts respectively to the plaintiffs, and for which the actions are brought, had removed and disposed of their property with intent to defraud creditors. The motions at special term came up upon orders to show cause, and were based, first, upon the supposed deficiencies in the moving papers upon which the orders of arrest were granted, and, secondly, upon affirmative affidavits made in behalf of the defendants, which, as it was claimed, controverted the allegations of the plaintiff’s affidavits. On the argument before this court, and presumably at the special term, the appellants’ counsel has attempted to present the case, first, upon the defects in the original papers, and, secondly, upon the ground that the affidavits upon which the motion to vacate the orders of arrest are made, disprove the facts originally alleged by the plaintiffs. We know of no practice that will permit either this court or the special term thus to consider a case in parcels. It is competent for the defendant to make a motion of this description upon the original papers upon which the order of arrest was granted, which may be before the judge who granted the order or at a special term, and if before the judge who granted it, it may be made with or without notice, as the judge may direct. This practice affords a speedy and easy way of enabling a judge who may have been deceived by the first reading of the papers to correct any error which he may have fallen into by inadvertance or otherwise. When, however, that motion is made in connection with affirmative affidavits, *351 the plaintiffs have a right to controvert the new facts stated in the defendant’s affidavits, as has been done in these cases, and has the right to ask that there should be but a single consideration and decision as upon one motion. It is not permissible to a plaintiff by this means to attempt to evade the payment of any costs which might be imposed upon the denial of a motion to vacate an order of arrest upon the original papers. These cases, therefore, must be considered solely upon the facts stated not only in the original papers, but in the affidavits made in behalf of the appellants and the opposing affidavits in answer thereto, though plainly enough the affidavits upon which the order of arrest was granted were amply sufficient, uncontradicted, to support such orders.
The defendants, who were copartners in business, borrowed, on the 13th and 14th of August, 1884, of sundry parties, the sum of $42,000. From July 1, 1884, t» August 30, 1884, they withdrew from the bank the sum of $37,496, and used the moneys for other purposes than the business of the firm. A certain portion of this sum is> represented by bills receivable and open accounts which the partners severally took. The defendant, Edward Wise, received for his own use the sum of $13,717.94; the defendant, Joseph Dessar, drew in the same time the sum of $4,294.35 to his own use; the defendant, Adolph Dessar, the. sum of $4,328.49, and the defendant, David Dessar, the sum of $4,556.20. In each instance the money was used for the benefit of the person who drew it. In addition to these sums there was jointly drawn out by all of the defendants the sum of $10,600 within the same period. This money also appears to have been, after it was drawn, divided equally or in certain proportions between the several defendants.
These transactions standing alone would not show such a fraudulent intent as to justify the arrest of the defendants in a civil action, but they cannot be considered separately from the method that the defendants had adopted, and the course pursued by them in their business for some time prior to these transactions. A fraudulent intent cannot generally be shown except by drawing a just inference from facts established by evidence. It is rare that there is a direct and positive evidence of a fraudulent intent.
The counsel for the defendants rely mainly in their appeal upon the case of Sherill Roper Air Engine Co. v. Harwood (30 Hun, 9), where it was held that the fact that one member of a firm, with knowledge of its insolvency, has paid certain of his individual debts out of the firm moneys with intent to give them a preference over the firm debts, is not sufficient to establish such a guilty intent to dispose of his *352 property for the purpose of defrauding his creditors as is required to justify his arrest under the provisions of the Code of Civil Procedure. In that case, the defendant’s misfortunes were brought upon him by no fault of his own, but they were the result of the wrong of a. copartner, who had, in the absence of the defendant, made and delivered fraudulent promissory notes in the firm name whereby the defendant had become hopelessly involved. This was done while he was absent in Europe. On his return, after discovering the wrong and the fraud perpetrated upon him by his partner, he turned over a portion of his property to his sisters, who had derived an interest in it through a gift of Ids father and former partner. All the court held in that decision was, that such payment standing alone, was not sufficient evidence of a fraudulent intent to justify the order of arrest. There was, indeed, in the case much in the conduct of the defendant himself which went far to disprove any fraudulent intent. The case, however, is authority for holding that a mere payment, by one or more partners, when they knew that the firm was insolvent, of their individual debts to the detriment of .the creditors of the firm, is not such a fraud as the statute contemplates which gives the right of arrest in civil actions.
Aside from the fact that the defendants had withdrawn upwards of $60,000 of the firm’s property and used it for their individual benefit, there are many circumstances which go far to sustain the orders of arrest. In the month of January, 1884, the defendant, Edward Wise, apparently with the full knowledge and approval of his co-partners, except in some slight matter of detail, represented to Squire Wood and furnished to him a statement in writing of the property of the defendants, as follows: “ Stock, $250,000; outstanding accounts, $230,000; cash, $10,000. Total, $490,000. Liabilities: Notes, $115,000; merchandise, $125,000. Total, $300,000. Difference, $190,000.”
This statement was given to Mr, Wood not only for the purpose of inducing the changing of the rating of the defendant’s firm by R. Gr. Dunn & Co., mercantile agency, but also with a view of having it communicated to creditors who might inquire of the witness of the condition of the firm, which statement was, in point of fact; communicated to the plaintiff’s in this action, Hinck & Co. This fact, stated by Mr. Wood, is not substantially denied by the defendants, but an effort has been made in the affidavit to break the force of the representation of this fact, if it were a fact, by showing that the statement itself was false. The defendant Wise himself, in the .affidavit, says that in the month of March, 1884, a detailed statement of the condition of the defendant was furnished by Adolph Dessar to *353 A. D Julliard & Co., whereby the assets were shown to be $521,513, and the liabilities $359,001.52, showing a surplus at that time of $162,511.59. It is now claimed that this statement, too, was erroneous, and showed an exaggerated .amount of surplus. Giving, therefore, the defendants credit for every possible mistake in items in the statements that they had made for the purpose of obtaining credit, it appears that a few months prior to their failure, which happened on the first day of September, 18Ó4, they had apparently a large surplus of property over and above their debts and liabilities. What has become of it all is impossible from these papers to say, yet that much of it has gone into the hands of the individual defendants for their private interests and profit or advantage, admits of no doubt. This fact is a material one to be taken into account in determining whether, in thus taking the property of the firm and using it, as disclosed by the evidence, they intended to defraud creditors.
Another circumstance is that a large and unusual amount of their stock in trade was sold at public auction during the year 1884, namely, the sum of $54,000, while the sales at auction theretofore had been scarcely more than nominal. Another circumstance is the borrowing of forty odd thousand dollars, and confessing judgments therefor, by which all of the property of the firm which the several defendants had not already got into their individual possession, or had not hypothecated, were seized under execution, so that not any property was left on the first day of September which could be levied upon by any firm creditor. It is idle for any person, passing upon the question of fact, to say that under "these circumstances, all of the defendants did not deliberately dispose of the property of the firm with an active and positive intent to'defraud the creditors of that firm.
- This case, therefore, presents facts leading to quite a different conclusion from those existing in the case of Sherrill Roper Air Engine Co. v. Harwood.
The orders appealed from should be affirmed, with ten dollars costs in each case, and disbursements.
Daniels and Brady, JJ., concur.